Mr. Mueller. May it please the court, my name is Joe Mueller and with my colleague Chris Straub, I represent the Appellants, Paradox Security Systems, Schmaltz-Hirskovitz, Peenish Bay Dirt. Your Honor, as this case comes to this court from a JMAL decision rendered mid-trial in which the judge found the defendants in this case did not infringe the asserted claims of the 406 patent. Yes, we understand the background and do get directly to where you believe is the best case for reversible error. Absolutely, Your Honor. There's three errors that I'd like to focus on in my time today. The first is the district court's imposition of a new categorical requirement for expert testimony as a predicate for proving a literal infringement on a limitation by limitation basis. This goes beyond this court's prior precedent and the limited circumstances in which this court has previously required expert testimony as an element of proof in a plaintiff's case. And there's several reasons why we submit that decision was error. Let me ask you though, I'm wondering if there really was a requirement for expert testimony imposed. Isn't it really a situation where certain testimony of the expert was excluded because material was not in the expert report? And then, absent that expert testimony, there was no other testimony in the court's view that supported your client's position. So I mean, I don't think the judge was saying you have to have expert testimony. It was just the fact that expert testimony was excluded. And without that, in the court's view, there was not supporting evidence. Well, Your Honor, I've got a couple of responses. First, the district court specifically articulated that in his view, expert testimony was required in this case. And in his general decision, he stated, based on the court's rulings, excluding the expert testimony as the monitoring defendants and as the DSC, the manufacturer of the equipment, who's going to grant judgment as a matter of law. And in our briefs, I believe in our opening brief, we cite in particular a language in which he said, there are certain cases because of the complexity of the case. I understand. You're correctly, I think, citing the record as to what's there. But my question, I guess, let's assume for the moment the judge did have statements to that effect that may be contrary to precedent. Is it still not the fact that if, when one takes away the any kind in support of the claim, then the grant of JMO is proper? Regardless of what the court said, correctly or incorrectly on the law relating to expert testimony. That is correct, Your Honor. I mean, that would be a proper independent ground for affirmation by this court. But that's not this case. In this case, there was more than just the expert testimony. There, in fact, was expert testimony. It was not an absence of expert testimony. The district court found an absence of expert testimony on two claim limitations, in claims one and two, and with respect to claim five as well. But there was more than that. There was record evidence that went to those particular limitations in this case. And we recited it in our opening brief and in our reply brief on a document-by-document basis. Now, parts of that record are contested. And the defendants in this case dispute, to be sure, the probative value of some of that evidence. But that's a fact. But the evidence was there. But the evidence would have had to have been introduced through the expert, would it not? No, Your Honor. And that's really our legal argument, is that it would not have to be introduced through the expert. But by whom, then, on your position, was it introduced? We know that there has to be an element-by-element proof of infringement. Certainly, Your Honor. Well, for example, a large number of exhibits were pre-admitted before the trial even began. And in this particular court, I think the record is quite clear. The judge has a process in which certain exhibits are pre-admitted. And as we noted in our reply brief, the defendant's own exhibit list reflects that. It memorializes that exhibits, including some of the ones that are in issue in this appeal, were pre-admitted by virtue of the court's process in this case. And that's not an unusual process. You're focusing now, I guess, on the documents at 5414 and 5458 of your limits. That's the limit for establishing the structure that is the D.C. bias? That's correct, Your Honor. And what is your theory as to what exactly is the structure? Not just that there is some kind of D.C. bias must be in the system, but what is the exact structure that produces the D.C. bias, in your view? And what's the evidence that supports that? Sure. Certainly, Your Honor. So the first thing, I think, to note is the construction. Excuse me. The construction of this limitation was a D.C. bias source coupled to the transmit optocoupler input and a transmit optocoupler output connected to the gate input of a gated line switch or equivalents thereof. And there's several parts to that. And the only one that's really contested is the first part, the D.C. bias source. All right. And on that point, our initial argument is that there is unquestionably, and I don't think this is in dispute, a D.C. bias signal. I understand that. But the question, because this is means plus function, you have to show the structure, not the existence of a D.C. bias. You have to prove the structure that creates that signal. What's the structure? The structure that creates that signal, Your Honor, is the ASIC, the record shows. And how do we know that? Certainly nothing that the expert said. Well, the expert was not permitted to testify on this. Well, when he was questioned, he gave some, what struck me as pretty vague responses. He didn't really focus in on this structure. And I think that was partly a function of the evidentiary rulings pre-trial, Your Honor, which we're not contesting with respect to the ASIC specification. But on those, I would note that the defendants themselves have taken two different positions on this. And for example, when there was a motion to compel, which was brought by the plaintiffs in this case, seeking ASIC specification evidence, the court said this, the district court, the court has carefully reviewed the documents provided by the defendants. The defendants argue that the ASICs and the Z-8 microcontroller at issue are not a component of plaintiff's invention because the functionality does not relate to any of plaintiff's asserted claims. The court agrees. While these ASICs and microcontroller are part of the accused control panel, it is the court's opinion that they are not in any way part of the claim limitations under the plaintiffs in the box. The defendants have said this is not relevant to the invention, to the claim limitations, and the court agrees. And there's a series of rulings thereafter which put the plaintiffs in a position where they really couldn't introduce a good deal of evidence concerning ASIC specifications. They did go into evidence as part of the pre-admission process, but they weren't permitted to provide much in the way of explanation about those cases. I'm a juror sitting in Marshall, Texas, and I happen to come across these two pages which if they made it into evidence they barely squeaked in and the course is probably at the bottom of a big box of stipulated exhibits. Okay, and I stumble upon 5414 and 5458. What is it that allows me to say, aha, well there's your D.C. bias structure. Point me to something on those two pages that tells me, a juror, not a person who already is still in this particularly complex art, but a juror, that tells me that's the source of the D.C. signal. Well, I think it's a fair point, Your Honor. Well, where is it here in these two pages? Well, I was going to say, Your Honor, but I'm not sure a juror would be able to identify that, but I think a lawyer in closing argument would be free to refer to that. It's an admitted  What does a lawyer say? You're the lawyer. What do you say as to these exhibits, as to jurors, here's where you find the D.C. bias. There's no dispute. The D.C. bias signal is present in the circuitry. No, no, no, but where's the structure that produces it as revealed by these two pages? I'm not seeing it. Well, I've read the two pages and I'm just not seeing the structure there where it says this is the source of the D.C. bias. Sure. The best that I could say is the tell-all pin at the end of the ASIC structure, which is connected to the rest of the circuitry, produces the signal. The signal exists. It originates in the ASIC. The expert was not permitted to provide a full explanation of that because of evidentiary rulings, which were in part attributable to positions the defendants took, but a lawyer would be free to make that connection in argument. It's an admitted exhibit, and that loops back to our legal work. But the lawyer can't make an argument if there's no evidentiary support. I mean, where is it here that one can say, I guess I'm sort of following up or asking again Judge Bryson's question, where in 5414 and or 5458 do you see something that says, okay, here's the D.C. bias source, Your Honor, and the lawyer would have to provide some explanation. And I agree with Judge Bryson to expect a juror to make the connection. But that's the problem. That's the problem. A lawyer can't provide explanation. That's an expert witness's job. Well, Your Honor, I think that that's our point, is that you don't need an expert to testify as to every limitation. If you have documentary evidence, lawyers can connect the dots. Okay, you may not need an expert, but you need somebody, and it has to be somebody other than the lawyer. I mean, the lawyer in summation counsel has to, I think, point to something and say, okay, here's this document, and you heard Mr. So-and-so testify as to X, Y, Z. That would be what you need, but that's not here. Throughout all the years, you didn't have the evidentiary foundation. Well, again, Your Honor, there's the D.C. bias, and this is actually added as context. This is actually not a complicated part of the circuit. The circuit as a whole may have its nuances and complexities, but all this is doing is just seizing the line to allow for complications. These items, the ASIC, is that a part of the D.C. bias? I'm sorry, Your Honor? Is that a part of the D.C. bias? The D.C. bias itself would be a signal. Right. I know that's a signal, but then what we're looking for is what's item 22 on figure one of the pen, I guess, right? That's correct, Your Honor. Okay, but how does an ASIC get you to a D.C. bias source? Because that is the component from which the signal originates. Inside the D.C. bias source. Well, we would say it is, but again, this is an argument that was not permitted to be fleshed out at trial because of the nature of the evidence. No, I guess what I'm saying is our dialogue, the little sort of colloquy you and I and Judge Bryson are having, seems to highlight the problem of the lack of the evidence. Well, again, Your Honor, I guess... You may well be right in terms of what you just said in response to my question, but you're not a witness, either expert or lay. That's correct, Your Honor. But again, it's our submission that lawyers can connect the dots in this fashion. Now, if it were just an attorney making conclusory assertions with no supporting documents whatsoever, I would agree that's improper. That's not this case. But what about the controllable element, which is, of course, it's not just a D.C. bias. It's controllably providing a low-level D.C. bias signal. What is it about these two pages that tells us that the D.C. bias signal is, by virtue of this structure, controllable? Two things, Your Honor. The first is the court's construction of the corresponding structure doesn't have the word controllably in it, and there's no explanation of what that means in the court's construction. That construction was not challenged by the defendants. The exact construction of the corresponding structure was a D.C. bias source 22 coupled to the rest, not a controllable D.C. bias source, and there's no explanation or description of what a controllable D.C. bias source would be distinct from as compared to a normal D.C. bias source. Reading the patent, I think one fair inference of what controllable means is just turning it on and off. This is not a component that would have a continuum of settings. It's really just seizing the switch or not seizing the switch. Again, I think the record provides a fair inference that the alarm panels can seize the switch and not seize the switch. They were, and if you're constantly seizing the switch or constantly not seizing the switch, they wouldn't. So I think that the word controllably in this context is actually quite simple, and the court's construction of the corresponding structure didn't carry over that term or explain it in any further fashion. So the construction itself wouldn't require more in the way of proof. Well, as you said, require more in the way of proof. This is really where I think we're all bogged down to try and understand where the error was. We don't have objections to the various evidentiary rulings, and I hear you tell us that these gaps could have been filled by attorney argument, and I don't hear you saying that these gaps were filled otherwise or, again, where the judge went wrong in not permitting that. Well, Your Honor, I would not characterize it as filling gaps. I would characterize it as connecting dots. The proof was in the record. There were documents describing the circuitry, both the full circuit to which the ASIC was connected and the ASIC itself. Those were in evidence, and it's our submission that expert testimony is not required to connect those dots. Well, we understand, but also, and I think we all agree, that we couldn't expect the jury to figure it out for themselves. So that to accept your argument, we would have to agree that attorney argument is permissible. That's correct, Your Honor. That's absolutely correct. You have to accept the argument that where there is documentary evidence in the record, an attorney can explain them, can argue, argue the evidence to the jury, and that expert Well, if the dots are too far apart, then you could fairly characterize the space between them, I think, as gaps, and that's the question, I guess, we have to decide. That's correct, Your Honor. All right. We'll save your rebuttal time. Thank you. Mr. Jakes. Good morning. May it please the court. There are two fundamental rulings that the district court made here, which I believe the court is well aware of. The district court precluded Dr. Williams from testifying on these two claim limitations, and also precluded Paradox from putting in evidence on the ASIC chip. But isn't that curious, why would the trial judge not permit testimony on some aspect which we're told, and should have been clear enough, was necessary to the plaintiff's case? It's very simple, Your Honor. It wasn't in his expert report, and it wasn't in the plaintiff's infringement contentions. The court down there has strict rules on what have to go into infringement contentions, and the ASICs were not included, and the specific structure as to these two limitations was not included in the expert's report. And very simply, the judge wouldn't let him testify to things that were outside his report. Those rulings are not challenged, so Paradox never really articulated its infringement theories, and now they argue that there is enough evidence that they can find these little scraps in the schematics and say that that's enough structure to satisfy 112 paragraph 6. Let me be sure I understand what's in the record and what's not, or what was before the jury and what wasn't. It's a little hard to tell from the appendix, because at various points Dr. Williams was testifying outside the presence of the jury, and I take it at some points inside the presence of the jury. Pages starting at about 4708, let's say, through about 4725. That, I take it, was in the presence of the jury. These are the sections that are cited in the briefs, for example, where Dr. Williams, particularly on 4714, is talking about the DC bias signal, etc. All that, I take it, is in the presence of the jury? That was, Your Honor, yes. And your argument with respect to his testimony there is he never really pins the tail on the donkey in terms of saying what it is that is the DC bias signal, the control of the DC bias signal source. That's right. He never really identifies the structure. There are two problems. One is not identifying... But he is talking about these limitations, which confused me, because I thought that he had been barred from talking about those limitations. He's not talking about claims 1 and 2. Well, I see that, but then on page 4707, he makes a reference to claim 2. That's what confused me. You see that on page 4707, line 14? Yes. So what's going on? Well, there he is talking about claim 2. Right. Page 4714, he's talking about claim 5, and then there are other portions where he's talking about claim 11. Where does he move to claim 5? I didn't see that segue. Maybe I missed it. Because there are some pages in between, according to our rules, that aren't included. Ah, missed pages. Yes, thank you. That's Judge Newman. That's the problem. I suspect that between pages 81 and 83, he's got the reference right on. Thank you. Even if you were to take those, the testimony on the other claims, which it doesn't support that structure anyway. Now, you put your fingers on the critical limitation, at least one of them, although there are actually several. But the DC bias source, it calls for a means for controllably providing a low-level DC bias signal. And there are two parts to that. One is the function has to be identically performed, and then there has to be the structure. The judges claim construction, the parties didn't disagree on the function.  Where they did disagree was on the structure. And the court in its claim construction identified the corresponding structure. They still had to do both, and they didn't do either one. There's nothing that shows that the means for controllably providing was met. And also, there's no identification of the structure. And the reason is simple. The expert wasn't allowed to testify on it, and these basic specifications were excluded. The judge would not let the expert testify on them. He tried to put up a drawing of it. The judge told him to put it down. The other side wanted to introduce deposition testimony on the ASICs. The judge said, you can't use that to prove these two limitations because that wasn't in your infringement contentions. So they were effectively precluded from putting on their proof of infringement. That extends over to the outgoing AC signal, which the judge also found was not met. If you go to claim five, in addition to that, there is the combining circuitry, where there was just really no testimony at all about that. That references the triangle in the claim figure, the patent figure, right? Figure one. And so the question is, what is the equivalent of that combining? It's combining the AC and the DC before it goes into the optocoupler. It's combining, right, the transmit signal and the DC bias signal before it goes into the optocoupler. And if you look at the testimony, Paradox's counsel said, can you show me where that is? And then he said, oh, wait a minute. Looked at his report and he said, I'll get back to it. Never did. So that's another example of a limitation that wasn't met. Chase, just one question. The ASICs and the blue light, are they the same thing? They are, but you have to be a little bit careful. The blue light ASIC was the name of it. It was the internal name of the particular part. And there's another ASIC. There are two different specifications and there is yet another ASIC that's nowhere in here. And those are actually used across the range of the products. So we don't actually have anything that ties one of these ASICs to a specific product in any event. We have two different specifications, two different pages from two different ASICs that supposedly the jury would have put together to come up with this structure. So we're all on the same page on what's in evidence and what isn't. Do you agree, after the reply brief analysis of the chart of the admitted evidence, that 5414 and 5458 are, in fact, in evidence? I don't, Your Honor, and let me explain why. Even though we have the pre-admitted list, that was never shown to the jury. It was never actually used with a witness. And so we may be just arguing semantics over terminology, whether or not something was admitted. For two reasons. One, no witness ever used it. Stipulated evidence. If somebody stipulates to the admission of the whole pile of papers, that pile of papers goes into the jury room, in my experience. We may have had an argument over that later on at some point because the judge would not let them show the ASIC to the jury. So he did exclude that evidence when they tried to put it on. So regardless of where we were pre-trial on admission, it was excluded during the trial from being shown to the jury. But when you say the judge excluded the ASIC, was the judge saying, I am not going to let you introduce proof that the ASIC is the DC, the controllable DC bias source? Yes. So what you would be saying, in effect, is that whether these pieces of paper were before the jury or not is irrelevant because the judge had foreclosed the jury from concluding that the ASIC was the source of the DC bias. That's exactly right. He said, you cannot use that. And Paradox wanted to play deposition testimony from one of our witnesses who was going to describe that circuitry. And we agreed, you can play that. But the judge said, if you do, I will instruct the jury that they cannot rely on it for these two limitations. And this is really where I do have trouble is to understand why the evidence would have been excluded. Your Honor, because it was not in Paradox's infringement contentions. They moved to change their theory right close to the trial. There were two instances. That's not that unusual as the case progresses and as the evidence is presented? Well, Your Honor, in the court's discretion, the judge was allowed to do that and say, you cannot change your theories at this point. It was too late. And you're saying they don't challenge those exclusions? They do not challenge those. And it happened at two points. First, when they wanted to bring in 271F. And at that point, they were actually relying on the ASIC for a different part of the claim. They said, we want to bring in the ASIC for the ring detection and another part of it. And that's where the judge said, well, that's not part of my claim construction. Then, immediately pre-trial, they said, we want to add it for the DC bias source. And the court said, no, you can't. Thank you. If there are no questions, I will turn my time over to my colleague. We have a little time for Mr. Sikorowicz. May it please the court? I represent Protection 1, one of the monitoring companies in this case. And Mr. Jakes has addressed the infringement of the actual accused products. I would instead like to focus on two separate and additional and independent reasons why the judgment as to the monitoring defendants should be affirmed. The first has to do with the fact that their testifying expert was precluded from testifying about the infringement of the monitoring defendants because his expert report did not include an opinion as to those defendants. It was totally lacking of that opinion. And then, in light of that exclusion of his testimony, the plaintiffs put on no evidence of infringement of the monitoring defendants. And because of that, the district court's judgment should be affirmed. Was there any question as to the source of the product that the monitoring entities were using? I don't believe it's been raised on this appeal. I don't believe there's any testimony as to where it was purchased from. The only thing that Paradox has relied upon in terms of use, let's say, by the monitoring companies is attorney argument or attorney opening statement. That's the only thing that they have argued about. I'm not sure I understand what you're trying to tell us, that even if infringement were found as to the producer, that the monitoring companies can't have been infringing because they were using different equipment? Or I don't really understand the line that you're asking to be drawn. Okay. There was, and we talked about the testimony about the accused products, but beyond that, there was no evidence that the monitoring companies used the devices or monitored the devices or installed the devices or even purchased the devices for those that did. It was purely in attorney opening statements that those statements were made. So that's the failure of Paradox's proof of trial is that their expert was prevented from talking about it and they put on no other evidence. We had Protection One's corporate representative sitting at trial. She was on the witness list for the last day of trial. They never called her. They never put on an issue of evidence about what the monitoring companies did with these products that we've been talking about. So that's the position, that's the argument that we're trying to make and without that evidence, you can't, they have nothing to show that the monitoring company's infringed. That's on the first point. On the second point, which I think is even probably more interesting, I think is the fundamental requirement of 35 U.S.C. 271 is that the infringement occur in the U.S. And in that regard, again, plaintiffs only that I can find point to opening statements of the lawyers and we have a dispute as to whether that's evidence or not. But if you spot them that argument, just for argument's sake, and if you spot them also the argument that they did not rely on counsel's opening statement at the trial court to oppose the JMLL, if you spot them both those arguments, they still fail. Because counsel's opening statements said nothing about where the products were installed. Counsel did say that the monitoring centers are in the U.S. But the circuit that is at the heart of this case is in the control panel, is in the panels that are being monitored. And there is no evidence in the homes? Panels in the homes. There is absolutely no evidence in the record of where those panels are located. Even in their own expert's report, he doesn't say where they're located. So there's a complete and utter failure of proof on an essential element of Section 271. So those two reasons are two separate and independent reasons apart from whether the products actually infringe or not as to why the judgment as to the monitoring defendants should be affirmed. And that's all I have unless you have more questions. Thank you, Mr. Ciccarone. There's three points. The first, in response to one of your questions, Judge Bryce, that you asked if we were in the realm of connecting the dots or gap-filling, how far apart is the evidence? And I think one additional piece of testimony that highlights that we're in the realm of connecting the dots and not gap-filling is at A4728, which is within the range that you identified earlier, Judge. A4728, 4728, Your Honor. This is not... Dr. Williams, right? I'm sorry. That's Dr. Williams? That's correct. This is testimony that was not being given specifically for Claims 1 and 2. So let me make that clear at the outset. But it is about the DC bias source. And in particular, at the bottom of that page, Dr. Williams testified, as noted for each respective product below, the adding a DC bias to the electronic equipment transmit signal coming from the electronic equipment to obtain a combined signal and feeding the combined signal to the transmit optocoupler is from, and then he says, one of ASIC and the ASIC to a microprocessor or to a first combo ASIC to the microcontroller. So he's identifying the ASIC as the source of the DC bias. Now, again, that's not in the context of Claims 1 and 2. So it's not directly within Claims 1 and 2. But it is evidence in the record, testimony that the jury heard about the source of the DC bias. And a lawyer could be fairly permitted to connect the dot between that and Claims 1 and 2. To hold otherwise would be to impose what the judge imposed below in a requirement of expert testimony for each and every limitation in a claim for literal infringement. That's just simply not the law, particularly when the defendants had yet to put their case on. And the closest case to what the judge held below would be the Centrifuge case, in which this court held that in a case with complex technology where the defendant's expert negates infringement, it can be appropriate as a matter of discretion to require expert testimony by the plaintiff. Here there was no expert testimony. The defense had not yet begun their case. So Centrifuge was not on point, and the district court's decision below is an extension of that body of case law, and it imposes a new categorical requirement of expert testimony. Second point, with respect to the monitoring companies, my brother counsel is correct that Ms. Dr. Williams was excluded from offering testimony on those companies as well. But that is a ruling that we're challenging on appeal, and we're challenging it on appeal because it rests on an incorrect legal premise, namely that use of an apparatus requires the same type of proof as use of a method claim, and it does not. And that's clear from, among other decisions, the NTP versus research in motion case, which Your Honor, Judge Schall was part of the panel for. In that case, the court stated quite clearly, because a process is nothing more than a sequence of actions of which it is comprised, the use of a process necessarily involves doing or performing each of the steps recited. This is unlike use of a system as a whole, in which the components are used collectively, not individually. The district court below held exactly the opposite and treated use of an apparatus as requiring the same type of proof as use of a method. The final point is, so if that incorrect evidentiary ruling is set aside, far more evidence about the monitoring companies would have come in. Moreover, as my brother noted, during the opening arguments, there was no dispute that the monitoring companies used DSC's equipment. They said so. That's not evidence, but it is an admission of the parties. It's admission made by an agent, namely the lawyers, for those parties and is binding upon them. In the Hardin case, which we cited from the Tenth Circuit, held that a denial of a JMAW motion was appropriate, where an admission and argument provided the, quote, missing link in the elements of the cause of action in that case. The same would be true here. The admissions in the opening argument are admissions, and they would have been buttressed by supporting expert testimony to boot had the evidentiary rulings rested upon an incorrect premise, namely that use of an apparatus is akin to use of a method, had not been offered. So for both those reasons, judgment against the monitoring companies was also an error, and it rested on legal errors, not just evidentiary rulings. Can I ask you just a quick housekeeping, really, question? I was confused by the references, and I think this comes from Dr. Williams, perhaps his deposition, to Loop 7 and Loop 8. If you look at page 22 of the red brief, I don't know if you have the red brief with you. Well, you know the page, and you know the reference, too. It looks like Loop 8 designates, well, it looks like the diode portion of the optocoupler, and then two lines heading back to the left, and Loop 7, I wasn't sure what that was, because it isn't designated on anything that I could find other than the reference to 7 and 14, which appears in the same figure. What is his reference to Loop 8, and what is his reference to Loop 7, if you know? Okay, so the one on the right, that's the one I understand you aren't going to be referring to? Well, the first one, are we together on page 22, or it's replicated on 25, of the red brief? Yes, I do, Your Honor. And you see 8, there's a three-sided line, green line, with a green 8 pointing down from it, and that seems to encompass the diode, I take it to be the diode portion, not the LED, of the optocoupler. I think that's an optocoupler, isn't it? Right in the middle, number 4. I am not sure, Your Honor. It looks like an optocoupler. I think it is. So in any event, the what is 8 and what is 7, Loop 7 and Loop 8, that left me unclear as to what he was referring to. Right, Your Honor, as I stand here, I'm not certain exactly what those are. Well, that's fine. It may be immaterial. We can ask Mr. Jakes to explain his diagram. That might be helpful. Well, that's actually, I think it was Dr. Williams that made the diagram. Okay, sure, that would be helpful. Yes, thank you, Your Honor. Okay, thank you, Mr. Mueller. Is that your diagram, Mr. Jakes? I think so. On page 22, Loop 7. Yes. On page 22 of our red brief, Loop 7, that was what the expert had identified. Dr. Williams, that is the means for control we're providing, meaning that particular limitation. Right, and what is Loop? I don't see any loops there. That's my problem. I see a three-sided figure that sort of hails off to the left, and I see a mark 7. I don't know if that's Loop 7. I can't vouch for his terminology other than what he marked in that particular color was to be 7. Okay, that's fine. Thank you. Okay, thank you, Mr. Jakes. Mr. Mueller, the case is taken under submission.